IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2015

## STATE OF TENNESSEE v. THOMAS MITCHELL

**Appeal from the Criminal Court for Shelby County**
**No. 1306257     Carolyn Wade Blackett, Judge**

_____

**No. W2014-02515-CCA-R3-CD  -  Filed November 24, 2015**
_____

The Defendant-Appellant, Thomas Mitchell, was convicted by a Shelby County jury of burglary of a building, a Class D felony.  See Tenn. Code Ann. § 39-14-402(a)(1).  As a Range III, persistent offender, he was sentenced to ten years in the Tennessee Department of Correction.   On appeal, the Defendant-Appellant argues that the evidence was insufficient to support his conviction and that the trial court abused its discretion in applying certain enhancement factors.   Discerning no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Jennifer Mitchell, Memphis, Tennessee, for the Defendant-Appellant, Thomas Mitchell.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Kevin Rardin, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Defendant-Appellant was arrested after he was confronted by the owner of Zip Products (Zip), a Shelby County business, for entering a building on his property without permission and cutting and removing wire from the premises.  The proof adduced at the Defendant-Appellant's November 4, 2014 trial was as follows.  On July 8, 2013, the day of the offense, Timothy Irwin Jr. and Mike Crawford, employees of Zip, were having lunch in their break room.  Zip is a metal stamping company that consists of three adjacent buildings, two of which were used primarily for storage.  Because of previous instances of burglary, Zip had placed security cameras equipped with motion detecting

technology in strategic locations among the three buildings. When the motion sensors were tripped, the cameras were programmed to send photographs of the scene to assigned cell phones.

At roughly 11:45 a.m. on the day of the offense, Irwin and Crawford received alerts that the cameras had been triggered and received photographs of a man, identified at trial as the Defendant-Appellant. Irwin and Crawford asked another employee to call the police and proceeded to the location of the camera. Both men had handgun carry permits and were armed with pistols.

Irwin testified that he approached the alley near the second building where the picture had been taken and observed the Defendant-Appellant walking back and forth from the third building and the alley. The Defendant-Appellant was cutting wire from the building and piling it up in a bundle in the alleyway. Irwin and Crawford watched the Defendant-Appellant for approximately fifteen or twenty minutes as he used bolt cutters to cut into the conduit and pull wiring out of one of the buildings. Irwin continued to watch the Defendant-Appellant pile the wiring up in the alley between the two buildings, and the Defendant-Appellant did not appear to notice him. However, Irwin eventually felt compelled to draw his weapon and told the Defendant-Appellant "to drop everything and just sit on the ground. And that's exactly what he did." Irwin further testified that he did not know the Defendant-Appellant, and that the Defendant-Appellant did not have permission to remove anything from Zip's buildings.

Crawford testified consistently with the testimony of Irwin; however, Crawford did not observe the Defendant-Appellant enter or exit any of the buildings. Crawford explained that while he and Irwin stood in the alley, Irwin partially blocked his view of the Defendant-Appellant. John Canter, a patrol officer with the Memphis Police Department, testified that, upon his arrival, "the owners . . . had caught an individual taking stuff off the side of their building." Officer Canter searched the Defendant-Appellant, found a pair of "tin snips" on his person, and placed him under arrest. Officer Canter also took several photographs of the scene, which were introduced at trial.

The Defendant-Appellant did not offer any proof. After deliberations, the jury convicted the Defendant-Appellant, as charged, of burglary of a building. At the December 3, 2014 sentencing hearing, the Defendant-Appellant conceded that he qualified to be sentenced as a Range III, persistent offender based on his prior convictions. Following arguments of counsel, the trial court enhanced the Defendant-Appellant's sentence based on factors (1), that the Defendant-Appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (8), that the Defendant-Appellant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the

community. Tenn. Code Ann. § 40-35-114(1), (8). The trial court declined to apply mitigation factor (1) of Tennessee Code Annotated section 40-35-113, and sentenced the Defendant-Appellant to ten years at forty-five percent in the Tennessee Department of Correction. That same day, the Defendant-Appellant filed a motion for new trial or judgment of acquittal, which was denied. The Defendant-Appellant then filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant-Appellant argues that the evidence was insufficient to support his conviction for burglary of a building and that the trial court erred in its application of sentencing factors (1) and (8). Specifically, he claims that the testimony of the State's witnesses as to whether he entered the building was inconsistent and that the trial court's misapplication of sentencing factors resulted in an excessive sentence. The State contends that the evidence was sufficient to support the conviction and that the trial court properly imposed a ten-year sentence. Upon review, we agree with the State.

**I. Sufficiency of the Evidence.** In this case, the Defendant-Appellant contends that the testimony regarding whether he "entered" any of the buildings on Zip's property was so inconsistent that no rational jury could have found the necessary elements for burglary of a building beyond a reasonable doubt. The State maintains that the evidence was sufficient to support the conviction.

In considering this issue, we apply the following well-settled principles of law. "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence,

circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." Dorantes, 331 S.W.3d at 379 (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" Rice, 184 S.W.3d at 662 (quoting Marable, 313 S.W.2d at 457). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Dorantes, 331 S.W.3d at 379 (quoting Hanson, 279 S.W.3d at 275).

To sustain a conviction for burglary of a building, the State was required to prove that the Defendant-Appellant entered a building, other than a habitation, that was not open to the public, with the intent to commit a felony, theft or assault within the building. Tenn. Code Ann. § 39-14-402 (a)(1). Here, the Defendant-Appellant challenges only the "entry" element of the offense, arguing that the State's evidence regarding whether he entered one of Zips' buildings was insufficient for a reasonable jury to find that element of the offense beyond a reasonable doubt. "Entry" means the intrusion of any part of the body or intrusion of any object in physical contact with the body or controlled by remote control. Id. § 39-14-402(b).

Viewed in the light most favorable to the State, the record shows that on the day of the offense, a motion sensor from Zip's camera system was triggered and alerted Zip

-4-

employees of an intruder. The alert sent employees a photograph of the Defendant-Appellant, who was located between two of their buildings. Irwin, one of the employees, approached the area indicated by the camera and observed the Defendant-Appellant for fifteen minutes "walking back and forth between the alleyway and <u>inside</u> the farthest third building." He further observed the Defendant-Appellant removing wire from the same building. A photograph of the Defendant-Appellant, admitted into evidence, showed him located in the alleyway of Zip's property at the time of the offense. Another photograph, admitted into evidence, showed the wiring he was carrying when he was confronted by Irwin. Irwin testified that the photograph accurately reflected the <u>inside</u> of the third building and that "this is exactly where the Defendant-Appellant dropped all of the stuff he was carrying, the bolt cutters, and some gloves and all the main wiring he'd pulled out." And finally, the Defendant-Appellant was found in possession of wire cutters and tin snips when police searched him. Based on the above proof, there is more than ample evidence for a rational jury to find that the Defendant-Appellant entered the building, not open to the public, with the intent to commit a felony or theft within the building. <u>See e.g.</u>, <u>State v. Paul Eugene Riggins</u>, No. 01C01-9512-CC-00408, 1997 WL 211256, at *3 (Tenn. Crim. App. Apr. 30, 1997) (affirming burglary of a building conviction and noting that a rational juror could conclude beyond a reasonable doubt that since the door was open, the bolt pried loose, and the padlock missing, some part of the defendant's body or the tools used had intruded into the equipment room). He is not entitled to relief on this issue.

**II. <u>Sentencing.</u>** The Defendant-Appellant argues that the trial court abused its discretion by imposing a ten-year sentence. Although he does not dispute his status as Range III, persistent offender, he argues that the trial court erred in its application of sentencing factors (1) and (8), which resulted in an excessive sentence. The Defendant-Appellant offered no proof at the sentencing hearing, and the presentence report is not included in the appellate record. The State responds that any issue as to sentencing is waived for failure to include a copy of the presentence report in the record on appeal, and that, in any event, the trial court properly imposed the sentence in this case. For the reasons that follow, we agree with the State.

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." <u>State v. Bise</u>, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." <u>Id.</u> at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." <u>Id.</u> "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range

should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.[1]

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b).

The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102(3)(C), -103(5). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4).

"A 'persistent offender' is a defendant who has received: (1) [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes where applicable." Id. § 40-35-107(a). Persistent offenders receive Range III sentences, see Tenn. Code Ann. § 40-35-107(c), which carry higher criminal penalties and require offenders to serve a greater portion of the sentence before becoming eligible for release. Id. § 40-35-107, Sentencing Comm'n Cmts.; see also id. § 40-35-501(e). The punishment range for burglary of a building, a Class D felony, is between two and twelve years, with sentences in Range III from eight to twelve years. Tenn. Code Ann. §§ 39-14-402(c), 40–35–112(c)(4).

After finding that the Defendant-Appellant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, enhancement factor (1), and that the Defendant-Appellant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into

---

[1] The Defendant-Appellant's brief cites our standard of review for the length, range and manner of sentence prior to the 2005 amendment to the Sentencing Act. Significantly, our review is no longer de novo with a presumption of correctness.

the community, enhancement factor (8), the trial court sentenced the Defendant-Appellant to ten years. Because the sentence is within the applicable range, it is afforded a presumption of reasonableness so long as the record reflects a proper application of the purposes and principles of sentencing.

Initially, we note that the Defendant-Appellant has failed to include the presentence report in the record on appeal. The absence of the presentence report from the record on appeal significantly hampers our ability to analyze the application of the enhancement factors in this case. The appellant has the burden of ensuring that the appellate record contains a fair, accurate, and complete account of what has occurred regarding the issues that are the bases of the appeal. See Tenn. R. App. P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn.1993). The appellant risks waiving the issues on appeal if an incomplete record is submitted to this court. Here, the record contains the transcript from the sentencing hearing, the State's Notice of Intent to Seek Enhanced Punishment, and the Defendant-Appellant's Notice of Mitigating Factors. Because we find these documents sufficient to facilitate review, incomplete record notwithstanding, we will address the Defendant-Appellant's issues on their merits.

First, the Defendant-Appellant challenges the trial court's application of enhancement factor (1). In his brief, the Defendant-Appellant concedes that the presentence report, which was introduced as an exhibit at the sentencing hearing, lists six prior felony convictions in the Defendant-Appellant's criminal history along with "several misdemeanor convictions." The Defendant-Appellant argues, however, that the State was bound by its Notice of Intent to Seek Enhanced Punishment, which lists five felony convictions and two misdemeanor theft convictions. Therefore, the Defendant-Appellant asserts that the trial court erred in applying enhancement factor (1) because there was "no proof presented establishing the sixth felony conviction." We disagree.

The trial court's application of enhancement factor one is supported by the existence of the two misdemeanor theft convictions on the Defendant-Appellant's record. Those misdemeanor convictions were listed on the State's Notice of Intent to Seek Enhanced Punishment and our review of the sentencing transcript reflects that they were noted on the presentence report as well. Furthermore, the Defendant-Appellant never challenged the existence of those misdemeanor convictions at the sentencing hearing or on appeal. Accordingly, the State was not required to submit proof of an additional felony conviction. See State v. Kelly Haynes, No. W1999-01485-CCA-R3-CD, 2000 WL 298744, at *2 (Tenn. Crim. App. Mar. 14, 2000) ("There is no restriction in our sentencing provisions limiting the type of criminal convictions or behavior which may be used to support application of enhancement factor one."); see also State v. Lawrence Hailey, No. W2009-00759-CCA-R3-CD, 2010 WL 2219574, at *11 (Tenn. Crim. App. May 24, 2010) (noting that misdemeanor convictions could be used to apply

enhancement factor (1)). Accordingly, we conclude that the trial court properly applied enhancement factor (1) based on the Defendant-Appellant's previous misdemeanor convictions.

As to enhancement factor (8), the Defendant-Appellant contends that the trial court erred in finding that he had previously failed to comply with the conditions of sentencing involving release into the community based on two probation violation convictions that occurred in 1988 and 2012. As stated above, the Defendant-Appellant does not contest the existence of these convictions, but instead argues that they should not have been used to enhance the Defendant-Appellant's sentence because they did not occur during the pendency of the case at trial. As an initial matter, we are compelled to note that the Defendant-Appellant has failed to cite any authority or argument in support of this view. Technically, this issue can be waived on that ground alone. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Waiver notwithstanding, this issue is meritless. This court has repeatedly held that enhancement factor (8) contemplates a previous history of unwillingness to abide by the conditions of release into the community and, therefore, cannot be triggered solely by the commission of the offense for which the Defendant-Appellant is being sentenced. See State v. Barry Smith, Julian Kneeland, and Barron Smith, W2011-02122-CCA-R3-CD, 2013 WL 6388588, at *24 (Tenn. Crim. App. Dec. 5, 2013) (citing State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995)); see also State v. Adams, 45 S.W.3d 46, 60 (Tenn. Crim. App. 2000). Accordingly, we conclude that the trial court properly applied enhancement factor (8).

Finally, the Defendant-Appellant also claims the trial court erred in rejecting his claim that his conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). In declining to mitigate the sentence on this ground, the trial court reasoned as follows:

> [I'm] focusing on the word 'threatened'. Okay. That's what I'm looking at. And I think that whenever somebody is in a situation like that at that point and time of it happening, there's a possibility that something could go wrong where somebody could get hurt. Fortunately in this particular situation nothing happened. He was orderly. He did what he was asked to do. . . . but technically speaking he had no business on the property. He was wrong from the very beginning. So nobody knows what the outcome could have been. But we can look back on it now and say that nothing happened. Everything was orderly.

-8-

In <u>State v. Ross</u>, the Tennessee Supreme Court stated that mitigation factor (1) "focuses not on the circumstances of the crime," but rather "upon the defendant's <u>conduct</u> in committing the crime." 49 S.W.3d 833, 848 (Tenn. 2001); <u>see also</u> <u>State v. George Anthony Flevaris</u>, No. E2012-00978-CCA-R3-CD, 2013 WL 3816601, at *4 (Tenn. Crim. App. July 18, 2013). Based on the evidence adduced at trial, it is clear that, once caught, the Defendant-Appellant complied with the business owners and did not cause or threaten bodily injury. His conduct in committing the burglary of the building supported application of this mitigation factor. While we disagree with the trial court's failure to apply mitigating factor (1), given our review of the record, it does not invalidate or alter the sentence in this case. As a Range III, persistent offender, the Defendant-Appellant received a mid-range sentence of ten years. Upon our review, the record reflects a proper application of the purposes and principles of sentencing. Therefore, the Defendant-Appellant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE